UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| URIEL MARCUS, BENEDICT | § | |
| VERCELES, and others | § | **CIVIL ACTION NO. 1:14-CV-82** |
| similarly situated | § | |
| | § | |
| **Plaintiffs** | § | |
| | § | **CLASS ACTION COMPLAINT** |
| VS. | § | |
| | § | |
| APPLE INC., | § | |
| | § | |
| **Defendant** | § | |

## CLASS ACTION COMPLAINT

TO THE HONORABLE U.S. DISTRICT JUDGE:

**COME NOW**, Plaintiffs Uriel Marcus and Benedict Verceles ("Plaintiffs"), by and through their attorneys, bring this action on behalf of themselves and all others similarly situated against Apple Inc. ("Apple" or "Defendant").  Plaintiffs hereby allege, on information and belief, except as to those allegations that pertain to the named Plaintiffs, which allegations are based on personal knowledge, as follows:

### I.  NATURE OF THE ACTION

1.      Plaintiffs bring this class action on behalf of purchasers of Apple's "Macbook Pro Laptop Computer" (known as the Macbook Pro), "Macbook Laptop Computer" (known as the Macbook), and "MacBook Air Laptop Computer" (known as the Macbook Air) in California, Texas, and throughout the United States.

2.      The MacBook Pro and MacBook were represented as being, "The world's most advanced notebook".  *See* http://www.apple.com/store

3.      The integrated circuits and processors reside and operate on the Apple motherboard, known as the "Logic Board".  However, the Logic Board is not fit for the ordinary purposes (operating the crucial components of the system) for which it was intended.  Instead, the logic board – because it was negligently designed and manufactured – prematurely fails to work and causes the computer to crash.  As the Apple MacBook Pros, MacBooks, and MacBook Airs do not have the intrinsic hardware to operate without a logic board, the logic board is crucial to the functionality of the system.  As the logic boards fail, the Defendant's laptops are rendered useless.

Apple is and was aware of this substantial defect for over 6 years, but failed to disclose it or warn Plaintiffs and the Class of the defect.  As of the date of this filing, it continues to market and sell the defective logic boards, resulting in continuing damage to the Class.  In 2011, Apple CEO Tim Cook was told of the logic board defect, but chose to do nothing.  This cover-up shows that Apple had knowledge of the defect, yet willfully and intentionally decided to hide the defect, resulting in continuing damage to the Class.

If taken to the Apple Store commonly seen in shopping malls across the United States, consumers are told that the logic boards cost $310 and upwards to repair.  The logic boards routinely fail within 0-2 years of purchase, thus indicating a defect from the manufacturer.  As a result, Plaintiffs and the Class (which likely number in the millions) have purchased defective computers, which prematurely fail and render the laptops useless.

4.      Plaintiffs bring this class action on behalf of themselves and all others similarly situated, asserting claims under California's Unfair Competition Law, Cal. Bus.

& Prof. Code §17200 et seq. ("UCL" or "§17200"), the Consumer Legal Remedies Act, Cal. Civ. Code §1750 et seq. ("CLRA"), the Magnuson-Moss Warranty Act, 15 U.S.C. §2310(d)(1), Breach of the Implied Warranty of Fitness for a Particular Purpose, Breach of the Implied Warranty of Merchantability, violations of the Song-Berly Consumer Warranty Act, Cal. Civ. Code §1790 et seq. ("Song-Beverly"), Common Law Fraud in Texas, the Texas Deceptive Trade Practices Act, and Unjust Enrichment. Plaintiffs seek damages and equitable relief on behalf of the class, which relief includes but is not limited to the following: providing class members with a defect-free logic board, or if no such product exists, to refund Plaintiffs and class members the full amount paid for their Apple laptop computer which relies on the Logic Board for its power and usage; a refund of the replacement cost of the defective Logic Boards; costs and expenses, including attorney's fees; and any additional relief that this Court determines to be necessary to provide complete relief to Plaintiffs and the Class.

## II. JURISDICITON AND VENUE

5.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. §2310(d)(1)(B) and 28 U.S.C. §§1331, 1332, and 1367, because Plaintiffs' claims arise under federal statute. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

6.     With respect to the Magnusson-Moss Warranty Act claims, the amount in controversy in each individual claim is at least twenty five dollars ($25), the proposed class consists of over 100 members, and the aggregate damages exceed $50,000.

7.     This Court has original jurisdiction over this action under the Class Action

Fairness Act of 2005, 28 U.S.C. §1332(d)(2) ("CAFA"), as to the named Plaintiffs and every member of the Class, because the proposed Class contains more than 100 members, the aggregate amount in controversy exceeds $5 million, and members of the Class reside across the United States and are therefore diverse from Defendant.

8.     This Court has personal jurisdiction over Apple because it is authorized to conduct business in Texas, and it has intentionally availed itself of the laws and markets of Texas through the promotion, marketing, distribution, and sale of its laptops in Texas. Additionally, Apple has numerous retail stores in Texas and Apple is building a $150 Million dollar manufacturing facility in Texas

9.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.  Venue is also proper under 18 U.S.C. §1965(a), because Defendant transacts a substantial amount of its business in this District.

### III.  INTRADISTRICT ASSIGNMENT

10.     Assignment to the Brownsville Division is proper because a substantial portion of the acts, events, and omissions giving rise to this action occurred in Brownsville, Texas which is within the purview of the Brownsville Division of this District.

### IV.  PARTIES

11.     Plaintiff Uriel Marcus ("Mr. Marcus") resides in San Jose, California.  On May 16, 2012, Plaintiff purchased a new Apple MacBook Pro computer for $2,098.30, with the defective logic board.  Approximately 18 months after purchase, Plaintiff

noticed the screen and operating system would freeze.  Plaintiff contacted Apple Care and Defendant Apple diagnosed the problem as a logic board failure.  However, Apple refused to offer Mr. Marcus any type of repair or refund for his 18-month-old computer, telling him, "That's such a pity.  You should have bought the warranty."  Mr. Marcus routinely travels to and conducts business in Brownsville, Texas.

12.     Plaintiff Benjamin Verceles resides in Houston, Texas.  Plaintiff purchased a MacBook Pro, which came with the defective logic board, in July 2011.  Less than one month later, Mr. Verceles's laptop ceased to function.  Plaintiff took his laptop to the Apple Store where the Apple representative said that the cause was a defective logic board.  Since his computer was under warranty, the logic board was repaired free of charge.  Less than two years later, the new replacement logic board also failed. After taking the computer to the Apple, Plaintiff was informed that the replacement logic board was defective and that Apple would not pay for the repair.  Plaintiff was charged $310.00 plus tax of $25.58, for a total of $335.58 for the repair.

13.     Defendant Apple Inc. ("Apple") is incorporated in California.  Its executive offices and company headquarters are located in Cupertino, Santa Clara County, California.  Apple is registered to do business in the State of Texas, and conducts substantial business here.  Apple is a publicly traded company, with net sales of over $140 billion in 2013, at least $50 billion of that total in the United States alone.  Apple sells its MacBook Pro, MacBook, and MacBook Air Computers ("Subject Computers") with the installed Logic Boards to consumers throughout the United States, including to at least tens of thousands of consumers in California and Texas, which constitutes a significant percentage of Apple's sales in the United States.

## V.  DEFENDANT'S UNLAWFUL CONDUCT

14.     Since the early 1970s, Apple has engaged in the business of designing, manufacturing, marketing, distributing and selling personal computers and related products and services through its own retail, online stores, direct sales, third party wholesalers and resellers.

15.     On or about February 2006, Apple began designing, manufacturing, warranting, advertising, marketing, selling and providing the new MacBook series laptop computers.  The MacBook was the first generation of this new series and the MacBook Pro the second generation.  The instant lawsuit covers Defendant's MacBook, MacBook Pro, and MacBook Air laptops (collectively, the "Subject Computers") sold from the period of December 2009-present.  Apple sold the logicboards to Plaintiffs and the Class as original equipment included in its Subject Computers, and also as replacements for defective equipment.

16.     Apple markets the reliability and functionality of the logic board for both its MacBook Pro and MacBook computers.

17.     Regarding the Macbook Pro series laptop computers, Apple makes the following representations: "State of the Art, Breakthrough, Easy Access to Connections and Ports."  See http://www.apple.com/macbookpro/design.html.

18.     Regarding the MacBook series laptop computers, Apple makes the following representations: "The new MacBook is faster, has even more memory and storage, and is an ideal notebook for customers' growing library of digital music, photos and movies." See Apple Press Release – May 15, 2007.

19.     Apple also boasts that its MacBook Pro is its "state of the art" flagship portable designed "for mobile professionals" and "life on the road". See Apple Press Release June 5, 2007 http://www.apple.com/ca/press/2007_06/macbookpro.html.

20.     However, contrary to its advertisements, Apple's logic board is not "durable" or "designed to withstand the rigors of life on the go" but rather is defective, and tends to fail when used as intended.

21.     The logic board consistently fails and renders the subject computers useless.

22.     Apple knows about the logic board defect.  Combining a defective product design and manufacturing plants in China that engage in human rights violations (including child labor) Defendant Apple and CEO Timothy Cook have known about the situation for years.

23.     As the logic board designer and manufacturer, Apple possesses specialized knowledge regarding the composition of its logic board, and is in a superior position to know and learn about defects in its logic board.  In fact, as evidenced by the many purchasers of the subject computers with defective logic boards, who have gone through the trouble of logging on to Apple's website to complain of the problems alleged herein, Apple has been aware of these defects for many years, but has done nothing about them.

24.     From December 2010 through July 2012, more than 356 "customer reviews" of the laptop failures have been posted to the Apple Online Store.  The web page listing 'MacBook Pro Logic Board Failure' has been viewed more than 140,000 times.  The vast majority of the reviews are extremely negative, notifying Apple again

and again about its defective logicboards.  For example, an early posting about defective

logicboards on a MacBook Pro, posted on December 16, 2010, titled Re: MacBook Pro

Logic Board Failure states:

> *       "I just recently had the exact same problem. My AppleCare Protection
> Plan expired  about 10 days before the fault. Computer went to sleep and refused
> to wake up. Light on at the front - fans on etc but nothing - zip. Called the Apple
> Care helpline and they were very helpful and referred me to the Apple Store.
>           At the store they ran a check - but honestly I'm not sure whether they
> could really assess whether it was the graphics card or the logic board. Whatever
> it was they replaced the entire logic board foc (VERY expensive!) and all is OK
> now. So, my experience was good but I do share a growing concern about the
> "bustability" of the newer machines!"

> *       On December 21, 2011, still another customer wrote, "A couple of months
> ago, I had  the same on my MacBookPro 2.4GHZ (Model identifier: 3,1 -
> IntelCore 2 Duo). The motherboard had died - no Apple Care involved _ I bought
> it in Jan 2008 in San Fransisco, to say that not any guarantee claims could be
> made.
> The Apple store told me that the motherboard was from an ill-fated maufacturing
> batch. it was replaced at no costs. I would to learn if the same applies for your
> machine. By the way, the serial number of my MacBookPro is *. May be this will
> help speed up things. Good luck."

> *       On December 27, 2010, another customer wrote, "Keith, I am currently
> dealing with  the same issue. I have a MPB 15 inch 2.2Ghz I bought Jan 2, 2008,
> and this exact problem occurred precisely 20 December this month.
>           My AppleCare is over in about five days, but to be honest it's not making
> much difference as Apple is relishing the fact they can blame this on an
> "Accidental damage" repair that happened March this year.
>
>           Despite the face that I've done research and found almost 30 cases
> mentioning this problem with the same model and purchased within about a three-
> month time frame (and might I add no other computer model with this issue),
> they're not moving from the warm Accidental Damage blanket.
>           I mentioned these separate cases of others having the same issue to Apple.
> I even told the guy to google MacBook Pro logic board and see that most of the
> results are about its failure. However, unsurprisingly, the other end refuses to
> openly admit any fault from their side. As I'm sure their 200 lawyers probably
> mentioned it would be best this way."

\*      On December 28, 2010, another customer writes, "Thanks everyone for sharing your  stories here. I'm more convinced than ever that the boards on these machines have an abnormally high failure rate.

I'll be back when I have something to report after the holidays. In the meantime enjoy your time off."


\*      On February 12, 2012, another customer writes, "Hello everyone, My macbook pro  has been updated to the 10.7.3 software.

I have had my mac for quite a while and over time my USB ports have slowly stopped working. I have tried deleting junk, updating everything, and nothing is working.

My Mac has been updated to the new lion and everything (I bought it online for $30, because it did not include it when i first recieved the mac) I tried resetting my computer, shutting it down and what not. I have looked at other forums about this and nothing I do works.The mouse I have is not recognizeable along with my Droid phone, printer, and iPod.

If anyone can please help me out, I am not sure if it is the hardware or what, but nothing is working and it has become very frustrating."


\*      On April 7, 2012, another customer writes, "Had the same problem on a brand new  2012 MacBook Pro 15 inch, Model : MacBookPro8,2.  After a couple of weeks the 2nd USB port would not work at all, just died one day for no reason I could tell, the only thing I ever plugged into it was Apple products, the 1st USB port worked fine. Tried all the above suggestions, nothing worked. The diagnostic About This Mac, More Info..., Hardware USB would never show anything connected to this port. Remember you have to restart this diagnostic everytime you plug something into it."


\*      On May 18, 2012, another customer writes, "I ended up going to the apple store about an hour and a half away from me. They dusted my mac and ran some tests.  Everything seemed fine surprisingly (I felt like an idiot seeing as they found nothing wrong with it) and the ports were up and running mostly, except that my nearest port was drawing a little less power.

No less than 24 hours upon returning back did they stop working again.  It might have to do  with something involving the download of iCloud or something? ^ or the new lion, both of which I am not sure of."


\*      On October 9, 2011, another customer writes, "that didn't work. The USB stopped  working and had to re-start...."


\*      On April 26, 2012, another customer writes, "Unfortunately, the problem reappeared after the first shutdown. Now I have no Ethenert nor USB nor sound again  Currently, Apple support is considering this issue as an hardware problem.

This may explain why it arise randomly and in very different contexts.  For me the next step is having both display's mother board and power board replaced...”


*        On June 12, 2012, another customer notes, "i have noticed that if i plug the power into my macbook pro, wait like 10 seconds, and then plug the thunderbolt cable in, it makes it much more likely that the usb devices will work. not 100% though.
the worst part is that if i log out after this happens i get a kernel panic. and then spotlight re-indexes (which takes forever) when it reboots. and if you also have an online backup program installed (eg mozy), you get two hard drive indexing processes going. which is rather slow.
        although when i first got it (before the 10.7.3 or 10.7.4 update) it was much much worse—plugging in the display would cause a kernel panic about 1 out of 10 times. (same problem here with a new macbook pro 15")”


*        On September 7, 2011, another customer writes, "I have a 13 inch macbook pro 2011. This evening, I plugged it in to charge as well as plugged USB devices into both ports. Upon plugging in the second device, my laptop shut down completely and now won't restart! The charge light in the adapter is blinking a very faint alternating green and orange (not the usual bright orange when charging). Has my computer died? Without a removal battery like my old macbook, can *I* do anything to fix it??
        As a student my laptop is used everyday so any prompt help is appreciated!!!”


*        On March 9, 2012 another customer notes, "My WD passport is not working on my USB ports anymore, and therefore is not backing up via Time Machine...it does not spin in the front port, and the rear port makes it beep.
        When I plug it into my Windows desktop machine, it will recognize the drive, so I think it is a power supply issue with the USB port on the macbook pro. Thumb drives work fine in my macbook pro.
        Any help??”


*        On January 12, 2012 another customer notes, "My USB port stoped working, so when I cannoect an external hard or flash memory or anything else there is no response, the other one still working though!
        I remember once I faced this problem and called Apple support and they asked me to restart and presseing Option and command key's while restating, and the problem was solved!  but now it is back again and I cannot solve it!  any one help please”


*        On June 16, 2011, another customer writes, "ok so my MBP (bought oct 2007) died on the weekend. i took it into my local apple store tonight and the

"genius" told my my logic board had died. my symptoms arent exactly the same as the nvidia because mine is just completely dead (the light blinks once and thats it, no sound, no fan, no power, nothing). he told me it would cost $2154.90 to fix it!!! i am going to go back in and tell him that i know there is a known problem with my mbp model and this just isnt good enough. i didn't pay $3000 for a laptop for it to die in 3.5yrs...."

\*      On September 4, 2011, another customer writes, "I have had exactly the same issue with my 2008 MBP this week - one morning it just wouldn't wake from sleep, fan on, drives spinning, latch light on, but nothing. Had it with me at work and a colleague managed to get it to come on by removing the battery for 10 sec and then resetting p-ram - went back to sleep, woke up again fine that evening, but since Thursday morning, same problem, and nothing will get it to boot up."

\*      On September 4, 2011, another customer notes, "Keith, My early 2008 MacBook Pro, died the same way. I tried all the start up resets you mentioned and you described the condition I found it, "The only signs of life are the white light on the screen latch that is now on, the fans are spinning and the DVD drive seems to work."

The route I took was to call AppleCare, run through the resets again with the rep, who then set an appointment for me at the nearby Apple Store. The Genius tried resetting the NVRAM and observed the solid sleep indicator. He declared the MLB dead within minutes of us starting. I was also having problems with the "stage light effect" in the display, so he is also having the display replaced, even though he could not observe it."

\*      On September 19, 2011, another customer notes, "I have a mid-2010 macbook pro. Had the blue screen several times. It would freeze and hang-up. Started to run hot. Brought it to Apple one month out of warranty and they changed my main logic board and thermal assembly FoC...thank you Apple! Question is, what the heck is really going on with these high-end machines and catastrophic failures? It sounds as if this repair will not be the end of my macbook worries."

\*      On September 11, 2011, another customer notes, "Wow.  I can't believe how widespread this issue is.  My early 2008MBP died on Sunday with all of the same issues as op.  My computer wasalso extremely hot when I picked it up on Sunday morning (it had beenrunning pretty hot for some time actually but usually when I pick it upfrom sleep it's cool).  I took it into Apple yesterday and after theyperformed all of the tests that I had already performed (removing thebattery, resetting CMS) they decided to look at it overnight.  I got acall this morning and they quoted me about $310 as a flat-rate for thelabor and any parts they might need during the repair. Includingparts!?  Compared to other people's stories it

seems like I might belooking to pay a lot more once I hear back from them (or did I just geta "great deal"?)."

*       On October 10, 2011, another customer writes, "During May this year my 15" macbook pro failed.  The Aberdeen Apple Store told me that the motherboard had died and would cost £800 to replace.

Now since it was out of warranty (purchased Oct 2007) I decided to look elsewhere.  Found a reputable repairer, who told me it sounded like a common fault with these particular models and they would attempt a repair.  After a few days away it returned fully working, however after a couple of weeks it died again with the same fault.  Sent it back to the same company on the understanding that they would attempt to repair once more.  Returned repaired for the second time, however after a week it died again with the same fault.  I again discussed this with the repair company.  They explained there is an inherent fault with these models and even to replace the motherboard could be an issue since its the boards that are faulty and a new board could fail within a day, week or of couse last a lifetime, and do I wish to take that chance at that cost?!!"

*       On October 14, 2011, another customer notes, "Okay, I have the same symptoms as Keith. Identical.

I've already resigned myself to the fact that I will be buying a new MBP this weekend (mine is 4+ years old), however, my question is this: Will Apple be able to recover data on my MBP with a failed logic board? I'm having such anxiety over this! If anyone has had experience with logic board failure + data recovery please let me know! Thank you!"

*       On October 14, 2011, another customer writes, "I guess I should chime in here since this thread is ongoing. Apple replaced my logic board for free but it took a call to California to make it happen. Its been some months now and it continues to work just fine. The person I spoke with at Apple corporate was very helpful and understanding and really came through for me.

Applecare on the otherhand was exactly the opposite. I still feel Apple needs to consistantly look after customers better since most people wound't or wouldn't think to go as far as I did to get satisfaction."

*       On November 5, 2011, another customer notes, "Unfortunately Apple's Macbook Pro Logic board failures were not limited to the problematic Nvidia cards. My brother and I both have the mid 2009 2.66ghz 15" and have had problems with it.  Just this week as I woke up to study for my boards like any day I saw my mac wasnt sleeping as usual but "shutdown". power wouldn't boot, noticed charger light was very faded. clicked battery indicator light wouldn't work either. tried 3 different chargers same thing."

\*      On November 13, 2011, another customer writes, "OK so I have read almost all of these posts and I am convinced I have a logic board failure. I was working on my MBP today and it just turned off. No noises, no beeps, not boot to disc. Anyway, have Genius Bar appointment tomorrow. I checked on my original sales receipt and I purchased it a year and three days ago. Really? I do not have Apple Care so does anyone think they will be human and fix it for nothing? I am a business member and have 4 Apple computers and 14 other Apple products."

\*      On November 14, 2011, another customer notes, "I was several weeks past the 1 year mark and Apple replaced my logicboard and thermal assembly FoC. Don't give up! I think if you reference ALL the entries here you'll be successful, best of luck."

\*      On November 14, 2011, another customer writes, "Boy, I have to add my thanks to Keith for his suggestion to call Customer Relations at Apple Headquarters (408.996.1010). That is the way to go!
We have 2 first-generation Intel MacBook Pros, and between them their logic boards have been replaced 6 times—one computer has had its logic board replaced 3 times in the last 8 months. The other computer just lost its hard drive due to its second logic board failure, but the Genius Bar wouldn't touch it because the HD was an aftermarket drive we'd had installed by an authorized Apple repair place. The repair place put in a new drive but still couldn't get the laptop to boot because of the logic board.... which the Genius Bar wouldn't replace because of the hard drive—ARGH!"

\*      On December 19, 2011, another customer notes, "Note for all Macbook pro users. If you have apple care, make sure you take in your computer to run all diagnostics before it expires. All I had was a computer that was getting too warm and took the computer in. The warranty covered a new battery (failure), new logic board, and new microphone cable and I had no idea any of this stuff was messed up.   All was replaced free of charge. I would suggest everyone take in their computers before the warranty expires to have it checked out. The total cost of the repairs was near 650 bucks...."

\*      On December 21, 2011, another customer writes, "my 4 month old macbook pro was bought in the uk, after a month or so with no problems, my hard drive failed, it was sent off for a replacement, about 2 months later, the hard drive has failed again. i took it into an apple store in florida and was informed my logic board was faulty and had been sending bad signals to other components, corrupting the hardware.therefore, every piece of hardware that recieves messages from the logic board could be corrupt. i am going to persue a full refund from the store i purchased it in as the supposedly reliable macbook pro has completely let me down, and i want to go back to a windows pc."

25.     It is not just reliability at issue here, but the direct cost to consumers of defective computers.  Moreover, it appears there is a concerted effort at Apple to keep the defect covert and not inform current or prospective customers about the logic board failures.  Nowhere on the Troubleshooting page, does Apple note that numerous reports have been received of logic board failures.

26.     To date, Apple has not taken action to remedy the defects in its logic boards, or to offer any replacement product.

27.     To ensure that the logic board would be fit for the ordinary or particular purposes for which the computer was intended, Apple should have adequately tested the logic boards prior to releasing them for commercial sale.  Had Apple exercised reasonable care in testing its logic board, it would have discovered that the logic board is improperly designed and causes premature failure of the computer.

28.     Apple also outsources its manufacturing to Chinese subcontractors and Chinese plants that have been criticized for worker suicides, excruciating working hours, and employing child labor.  Reports have also surfaced that the plant managers are expected to pay bribes or 'cooperation money' to local Chinese Communist Party Officials.

29.     The leadership at Apple responsible for shifting manufacturing to China in an effort to decrease supply chain costs includes current Apple CEO Timothy Cook, who was Senior Vice President for Worldwide Operations when the increased manufacturing in China began.

30.     Apple sold defective logic boards to Plaintiff and proposed class members that were not fit for their intended use.

31.     Apple also could and should have tested alternate designs of its logic boards to avoid these defects.  As noted, Apple has been aware of the weakness and defects in its logic board for years.

32.     Apple also could and should have manufactured its laptops in locations beside China.  Apple has been aware of the labor and safety violations in its Chinese manufacturing plants for years.

33.     Furthermore, Apple continues to manufacture and sell its defective logic boards in its MacBook Pros, MacBooks, and MacBook Airs that are still available for sale, and replacement components for repair of laptops, even after it was informed by its own customers of the specific design defects alleged herein.

34.     Apple profits enormously from the sales of its logic boards and laptops, while Plaintiffs and proposed class members incur damages, including the price they paid to purchase the defective laptops with the logic boards and the costs to replace them.

35.     Apple has a history of introducing defective products into the stream of commerce, and not informing consumers of significant defects in design.  Examples include iPhones with improperly designed antennas; MacBook Pros with defective monitors; and MagSafe Power Adapters that caught fire.  These defects have only been remedied through Class Action litigation in the San Jose Division of the Northern District of California.

## VI.  PLAINTIFFS' ALLEGATIONS

36.     Plaintiffs are purchasers of Apple laptops including the MacBook Pro, MacBook, and MacBook Air that were sold with defective logic boards.

37.     Plaintiffs purchased the subject computers and used the logic boards, believing them to be suited for the purpose for which they were intended: operating the computer.

38.     Since purchasing these computers, Plaintiffs have had to replace their logic boards, because, when used as instructed and intended, their logic boards failed. Plaintiffs and Class members have also lost the monetary value of their computers, such that the laptops are worth significantly less because they contain the defective logic board as original equipment.

39.     Plaintiffs learned that far from being the only one experiencing such problems with the logic boards, there were thousands of other similar customer complaints on Apple's website.

40.     In fact, Plaintiffs' experiences with the logic boards are typical of thousands of other Apple purchasers who have registered their complaints with Apple, and have documented their problems with the logic boards on various website forums dedicated to Apple products, including Apple's own website.  The similarity of the user complaints about the logic board further evidences the uniformity of the product defects alleged herein.

41.     Plaintiffs have suffered injury in fact and loss of money or property, and they have been damaged in the amount they paid for the defective replacement logic boards they had to purchase to use their laptop computers.  Plaintiffs have also been

damaged by the loss of value due to the fact that Apple sold their laptops with improperly

designed components.  Moreover, if no adequate and functional replacement logic board

exists, Plaintiffs have suffered damages in the amount of the full price they paid for their

laptop computers.

## VII.  CLASS ALLEGATIONS

42.     Plaintiffs bring this class action on behalf of themselves individually and

all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

43.     The proposed class consists of: All consumers who purchased an Apple

laptop computer from May 20, 2010 through and including the date of the class notice

(the "Class").  Excluded from the consumer class are governmental entities, the

Defendant, any entity in which the Defendant has a controlling interest, their employees,

officers, directors, legal representatives, heirs, successors and wholly or partly owned

subsidiaries or affiliated companies, including parent corporations, class counsel and their

employees; and the judicial officers and their immediate family members and associated

court staff assigned to this case.

44.     This action is properly brought as a class action for the following reasons:

(a)     the proposed class is so numerous and geographically dispersed

throughout the United States that the joinder of all class members is impracticable.  When

Plaintiffs do not know the exact number and identity of all class members, Plaintiff

believes there are tens if not hundreds of thousands of class members;

(b)     the disposition of Plaintiffs' and proposed class members' claims

in a class action will provide substantial benefits to both parties and the Court;

(c)      the proposed class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed class member were infringed or violated in the same fashion;

(d)      there are questions of law and fact common to the proposed class which predominate over any questions that may affect particular class members.  Such common questions include:

(i)      Whether Defendant exercised reasonable care in testing its logic board prior to its release for commercial sale;

(ii)      Whether Defendant's logic board is defective when used as directed, intended or in a reasonably foreseeable manner;

(iii)      Whether feasible alternative formulations of the logic board were available;

(iv)      Whether Defendant's logic board was fit for its intended purpose;

(v)      Whether Apple breached the implied warranty of fitness for a particular purpose;

(vi)      Whether Apple has breached the implied warranty of merchantability;

(vii)      Whether Apple has violated the Magnuson-Moss Warranty Act;

(ix)      Whether Apple is strictly liable to Plaintiffs and the class;

(x)      Whether Apple failed to warn Plaintiffs and the class;

(xi)     Whether Apple has violated the Song-Beverly Act;

(xii)    Whether Apple has violated the UCL;

(xiii)   Whether Apple has violated the CLRA;

(xiv)    Whether Apple has received funds from Plaintiffs and class members that it unjustly received;

(xv)     Whether Plaintiffs and proposed class members have been harmed and the proper measure of relief; and

(xvi)    Whether Plaintiffs and proposed class members are entitled to an award of punitive damages, attorney's fees and expenses against Defendant.

(e)      Plaintiffs' claims are typical of the claims of the members of the proposed class.

(f)      Plaintiffs will fairly and adequately protect the interests of the proposed class in that they have no interests antagonistic to those of the other proposed class members, and Plaintiffs have retained attorneys qualified in consumer class actions, business litigation, and complex litigation as counsel.

(g)      A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(i)      Given the size of individual proposed class member's claims and the expense of litigating those claims, few, if any, proposed class members

could afford to or would seek legal redress individually for the wrongs Defendant committed against them and absent proposed class members have no substantial interest in individually controlling the prosecution of individual actions;

(ii)      This action will promote an orderly and expeditious administration and adjudication of the proposed class claims, economies of time, effort, and resources will be fostered and uniformity of decisions will be insured; and

(iii)      Without a class action, proposed class members will continue to suffer damages, and Defendant's violations of law will proceed without remedy while Defendant continues to reap and retain the substantial proceeds of its wrongful conduct.

(iv)      Plaintiffs know of no difficulty that will be encountered in the management of this litigation, which would preclude its maintenance as a class action.

45.      Plaintiffs seek damages and equitable relief on behalf of the proposed class on grounds generally applicable to the entire proposed class.

## VIII.  FIRST CAUSE OF ACTION

### (Violations of California Business and Professions Code § 17200)

46.      Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

47.     California Business & Professions Code § 17200 prohibits acts of unfair competition, which means and includes any "unlawful, unfair or fraudulent business act or practice" and any act prohibited by Cal. Bus. & Prof. Code § 17500.

48.     Apple violated Cal. Bus. & Prof. Code § 17200's prohibition against engaging in an "unlawful" business act or practice by, inter alia, selling defective and non-merchantable laptops to Plaintiffs, proposed class members, and the general public, failing to use reasonable care to test its laptops prior to sale, and by continuing to sell its defective laptops after learning that the logic boards would fail prematurely when used as intended, in violation of Cal. Civ. Code §§ 1770(a), 1791, et seq., Cal. Comm. Code §§ 2313 & 2314, U.C.C. § 2-313 & § 2-315, 15 U.S.C. § 2310(d)(1), and the common law, including the common law of negligence, implied warranty, breach of covenant of good faith and fair dealing and breach of the duty to disclose.

49.     Plaintiffs reserve the right to allege other violations of law that constitute other unlawful business acts and practices.  Such conduct is ongoing and continues to this date.

50.     The foregoing conduct also constitutes "unfair" business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200.  Apple's practices offend public policy and are unethical, oppressive, unscrupulous, and violate the laws stated.  Further, such conduct is in violation of Cal. Civ. Code §§ 1770(a), 1791, et seq., and the common law, including the common law of negligence, implied warranty, breach of the covenant of good faith and fair dealing and breach of they duty to disclose.

51.     Apple's conduct caused and continues to cause substantial injury to consumers and their property, including Plaintiffs and proposed class members.  The gravity of Defendant's alleged wrongful conduct outweighs any purported benefits attributable to such conduct.  There were also reasonable available alternatives to Apple to further its business interests, other than voluntarily placing its defective laptops into the stream of commerce.

52.     Plaintiffs and Class members have suffered injury in fact and have lost money and/or property as a result of Defendant's unfair and unlawful business practices and are therefore entitled to the relief available under Cal. Bus. & Prof. Code § 17200, *et seq.,* as detailed below.

## IX.  SECOND CAUSE OF ACTION
### (Violations of the Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.*)

53.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

54.     This cause of action arises under the Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.*  Plaintiffs are consumers as defined by  Cal. Civ. Code § 1761(d).  Apple's laptops constituted "goods" as defined by Cal. Civ. Code § 1761(a).  At all times relevant hereto, Apple constituted a "person" as that term is defined in Cal. Civ. Code § 1761(a), and Plaintiffs and class members' purchases of the laptops constituted "transactions" as that term is defined in Cal. Civ. Code § 1761(b).

55.     Apple violated and continues to violate the CLRA by engaging in the following deceptive practices specifically proscribed by Cal. Civ. Code § 1770(a), in

transactions with Plaintiffs and class members that were intended to result or which resulted in the sale or lease of goods or services to consumers:

      (a)     In violation of Cal. Civ. Code § 1770(a)(5), Defendant's acts and practices constitute misrepresentations that the laptops in question have characteristics, benefits or uses which they do not have;

      (b)     In violation of Cal. Civ. Code § 1770(a)(7), Defendant has misrepresented that the laptops in question are of a particular standard, quality and/or grade, when they are of another; and

      (c)     In violation of Cal. Civ. Code § 1770(a)(9), Defendant advertised the laptops in question with the intent not to sell them as advertised or represented.

56.     Apple has made uniform representations that its laptops are high-quality products that will perform as represented. These representations, as set forth above, were false, deceptive, and/or misleading and in violation of the CLRA.

57.     Pursuant to Cal. Civ. Code § 1782, Plaintiffs notified Apple in writing by certified mail of the particular violations of Cal. Civ. Code § 1770 alleged herein, and have demanded that Apple rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. Plaintiffs sent this notice by certified mail, return receipt requested, to Apple's principal place of business.

58.     Apple has failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers

within 30 days after receipt of the Civil Code § 1782 notice, thus Plaintiffs seek actual

damages and punitive damages for violation of the Act.

59.     In addition, pursuant to Civil Code § 1780(a)(2), Plaintiffs are

entitled to, and therefore seek, a Court order enjoining the above-described wrongful acts

and practices that violate Cal. Civ. Code § 1770.

60.     Plaintiffs and the class are also entitled to recover attorney's fees,

costs, expenses, and disbursements pursuant to Cal. Civ. Code §§ 1780 and 1781.


## X.  THIRD CAUSE OF ACTION

**(Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. Sec 2310(d)(1))**

61.     Plaintiffs re-allege and incorporate by reference the allegations

contained in the paragraphs above as if fully set forth herein.

62.     By placing its laptops in the stream of commerce, Apple impliedly

warranted that it was reasonably safe for its intended use, i.e., to function without

premature failure.

63.     Apple's laptops are not merchantable.  In breach of the implied

warranty of merchantability and fitness for a particular purpose, Apple's logic board fails

to work properly, thus rendering the laptop unusable.

64.     Apple's laptops were not reasonably designed for their intended

use when it left Defendant's control and entered the market.

65.     The laptop and logic board defects were not open and/or obvious to consumers.  Any purported limitation of the duration and scope of these warranties given by Apple is unreasonable, unconscionable, and void, because Apple knew or recklessly disregarded the fact that the defect in the logic board existed and might not be discovered, if at all, until the logic board had been used for a period of time longer than the period of any written warranty, and Apple willfully withheld information about the defect from purchasers of Apple laptops.  Moreover, due to the unequal bargaining power between the parties, Plaintiffs and the class members had no meaningful alternative to accepting Apple's attempted pro forma limitation of the duration of any warranties.

66.     The defective design and manufacture of the logic board was, and is, a inherent defect that was known to Apple to be a defect at the time Plaintiffs and class members purchased their Apple laptops.

67.     The presence of this defect, and Apple's failure to warn of its presence or cure the defect, constitutes a breach of both the express and implied warranties.

68.     Apple's knowledge of this inherent defect, through both Plaintiff's 30-day demand letter, internal company meetings held with Apple CEO Timothy Cook, and through complaints lodged on its own website about the logic boards, has given Apple more than a reasonable opportunity to cure the defect – an opportunity that Apple has failed and refused to take.

69.     As a result, Plaintiffs and proposed class members have been damaged in, inter alia, the amount they paid to purchase and replace Apple's un-

merchantable logic boards, and if no replacement exists, in the amount they paid for their related Apple laptop Computer, which relies on the logic board for its power and usage.

70.     Pursuant to 15 U.S.C. Sec 2310(D)(2), Plaintiffs are also entitled to attorney's fees and reimbursement of expenses.


## XI.  FOURTH CAUSE OF ACTION

### (Breach of Implied Warranty of Fitness for a Particular Purpose)

71.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

72.     By placing its laptops in the stream of commerce, Apple impliedly warranted that its laptops were reasonably fit for its particular purpose, i.e., to withstand usual wear as a portable device and operate the integrated circuits, ports, and components without premature failure of its logic board.

73.     Apple's laptops are not fit for their particular purpose.  In breach of the implied warranty of fitness for a particular purpose, Apple's logic board fails rendering the laptop useless and inoperable.

74.     Apple's laptops were not reasonably suited for its intended particular use when it left Defendant's control and entered the market.

75.     The logic board defects were not open and/or obvious to consumers.

76.     Any purported limitation of the duration and scope of the implied warranty of fitness for a particular purpose given by Apple is unreasonable, unconscionable, and void, because Apple knew or recklessly disregarded that the defect in the logic board existed and might not be discovered, if at all, until the laptops had been used for a period of time longer than the period of any written warranty, and Apple willfully withheld information about the defect from purchasers of Apple computers. Moreover, due to the unequal bargaining power between the parties, Plaintiffs and class members had no meaningful alternative to accepting Apple's attempted pro forma limitation of the duration of any warranties.

77.     As a result, Plaintiffs and proposed class members have been damaged in, *inter alia,* the amount they paid to purchase and replace Apple's unfit logic boards, and if no suitable replacement exists, in the amount they paid for their related Apple laptop Computer, which relies on the logic board for its function and usage.

## XII.  FIFTH CAUSE OF ACTION

### (Breach of Implied Warranty of Merchantability)

78.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

79.     By placing its laptops in the stream of commerce, Apple impliedly warranted that its logic board was reasonably functional for its intended use, i.e., to withstand usual wear as a portable device and to operate the laptop without premature failure.

80.     Apple's laptops are not merchantable.  In breach of the implied warranty of merchantability, Apple's logic board fails to operate properly and disables the laptop, rendering the device useless.

81.     Apple's laptops were not reasonably designed and/or manufactured for its intended use when it left Defendant's control and entered the market.

82.     The logic board defects were not open and/or obvious to consumers.

83.     Any purported limitation of the duration and scope of the implied warranty of merchantability given by Apple is unreasonable, unconscionable and void, because Apple knew or recklessly disregarded that the defect in the logic board existed and might not be discovered, if at all, until the laptops had been used for a period of time longer than any written warranty, and Apple willfully withheld information about the defect from purchasers of Apple computers.  Moreover, due to the unequal bargaining power between the parties, plaintiffs and the class members had no meaningful alternative to accepting Apple's attempted pro forma limitation of the duration of any warranties.

84.     As a result, Plaintiffs and proposed class members have been damaged in, inter alia, the amount they paid to purchase and replace Apple's unmerchantable logic boards, and if no suitable replacement exists, in the amount they paid for their related Apple laptop Computer, which relies on the logic board for its component power and usage.

## XIII. SIXTH CAUSE OF ACTION

### (Violations of the Song-Beverly Consumer Warranty Act,

### Cal. Civ. Code § 1791 et seq.)

85.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

86.     This cause of action is brought under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1791 et seq.  Plaintiffs are "buyers," Defendant's laptops are a "consumer good" and Defendant is a "retailer" and "manufacturer" within the meaning of Song-Beverly.

87.     By placing its laptops in the stream of commerce, Apple impliedly warrants that its laptops are reasonable for their intended use, i.e., to withstand usual wear as a portable device.

88.     Apple's laptops are not merchantable.  In breach of its implied warranty, Apple's logic board prematurely fails, thus rendering the laptop inoperative.

89.     Apple's laptops were not reasonable for their intended use when they left Defendant's control and entered the market.

90.     The defect in Apple's laptops were not open and/or obvious to consumers.

91.     As a result, Plaintiffs and the proposed class members have been damaged and will continue to be damaged in, inter alia, the amount they paid to purchase and replace un-merchantable laptops with the defective logic boards, and if no

replacement exists, in the amount they paid for their related Apple Computer, which relies on the logic board for its power and usage and for their costs, expenses and attorney's fees.

92.     Pursuant to Cal. Civ. Code § 1794, Plaintiffs and proposed class members are entitled to damages under the Song-Beverly Consumer Warranty Act, including, inter alia, reimbursement in the amount they paid for Defendant's logic boards, and if no replacement exists, in the amount they paid for their related Apple laptop computer, which relies on the logic board for its power and usage, and for their costs, expenses and attorneys' fees.

## XIV.  SEVENTH CAUSE OF ACTION

### (Fraud under Texas Common Law)

93.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

94.     To establish common law fraud in Texas, a plaintiff must prove that a) the defendant made a material misrepresentation, b) which was false, c) which was either known to be false when made or which was recklessly made as a positive assertion without knowledge of its truth, d) which the speaker made with the intent that it be acted upon, e) the other party took action in its reliance upon the representation, and f) thereby suffered injury. *In re FirstMerit Bank, N.A.,* 52 S.W. 3d 749, 758 (Tex. 2001); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex. 1998).

95.     Apple committed common law fraud in Texas by representing that: the subject computers were functional and suitable for sale; selling subject computers with the defective logic board ; knowing the logic board was defective; advertising that the computers were suitable for use; that Plaintiffs relied upon Apple's statements of suitability; and that Plaintiffs suffered injury. *In re FirstMerit Bank, N.A.,* 52 S.W. 3d 749, 758 (Tex. 2001); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex. 1998).

96.     Plaintiffs reserve the right to allege other violations of law that constitute other unlawful business acts and practices.  Such conduct is ongoing and continues to this date.

97.     Apple's conduct caused and continues to cause substantial injury to consumers and their property, including Plaintiffs and proposed class members.  The gravity of Defendant's alleged wrongful conduct outweighs any purported benefits attributable to such conduct.  There were also reasonable available alternatives to Apple to further its business interests, other than voluntarily placing its defective logic boards into the stream of commerce.

98.     Plaintiffs and Class members have suffered injury in fact and have lost money and/or property as a result of Defendant's unfair and unlawful business practices and are therefore entitled to the relief available under Texas Law.


## XV.  EIGHTH CAUSE OF ACTION

### (Violations of the Texas Deceptive Trade Practices Act)

99.     Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

100.     This cause of action arises under the Texas Deceptive Trade Practices Act, Texas Business and Commerce Code Section 17.46 (b)(5), (7), (9), and (24).  Plaintiffs are consumers as defined by Texas Business and Commerce Code Section 17.45 (4).  Apple's computers constituted "goods" as defined by Tex Bus Comm Code 17.45 (1).  At all times relevant hereto, Apple constituted a "person" as that term is defined in Tex Bus Comm Code 17.45(3).

101.     Apple violated and continues to violate the DTPA by engaging in the following deceptive practices specifically proscribed by the Tex Bus Comm Code Section 17.46 (b), in transactions with Plaintiffs and class members that were intended to result or which resulted in the sale or lease of goods or services to consumers:

(a)      In violation of Tex Bus Comm Code Section 17.46 (b)(5), Defendant has represented that the computers have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they does not have;

(b)      In violation of Tex Bus Comm Code Section 17.46 (b)(7), Defendant has represented that the computers are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(c)      In violation of Tex Bus Comm Code Section 17.46 (b)(9), Defendant advertised the computers in question with the intent not to sell them as advertised;

(d)      In violation of Tex Bus Comm Code Section 17.46 (b)(24), Defendant has failed to disclose information concerning the defective logic boards,

which was known at the time of the transaction, if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

102.    Apple has made uniform representations that its computers are a high-quality product that will perform as represented.  These representations, as set forth above, were false, deceptive, and/or misleading and in violation of the Texas Deceptive Trade Practices Act.

103.    Pursuant to the Texas Business and Commerce Code, Section 17.505(a), Plaintiffs have notified Apple in writing by certified mail of the particular violations of the Texas Deceptive Trade Practices Act alleged herein, and have demanded that Apple rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to act.  Plaintiffs sent this notice by certified mail, return receipt requested, to Apple's principal place of business.

104.    If Apple fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 60 days of the date of written notice, pursuant to the Texas Deceptive Trade Practices Act, Plaintiffs will amend their Complaint to seek actual, punitive, and statutory damages and all other relief available to Plaintiffs and the Class under the DTPA.

105.    In addition, pursuant to the Texas DTPA, Plaintiffs are entitled to, and therefore seek, a Court order enjoining the above-described wrongful acts and practices that violate the Texas DTPA.

106.    Plaintiffs and the class are also entitled to recover attorney's fees, costs, expenses, and disbursements pursuant to the Texas DTPA.

## XVI.  NINTH CAUSE OF ACTION

### (Money Had and Received)

107.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

108.    As more fully set forth above, Apple had in its possession money which in equity and good conscience belongs to Plaintiff and Class members, which should be refunded to Plaintiffs and Class members.

## XVII. TENTH CAUSE OF ACTION

### (Unjust Enrichment)

109.    Plaintiffs re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

110.    Apple improperly received and continues to improperly receive from Plaintiffs and Class members billions of dollars as result of the conduct alleged above.

111.    As a result, Plaintiffs and the class have conferred a benefit on Apple to which Apple is not entitled.  Apple has knowledge of this benefit, wrongfully and deceptively obtained this benefit, and has voluntarily accepted and retained the benefit conferred to it.  Apple will be unjustly enriched if it is allowed to retain such

funds and therefore, a constructive trust should be imposed on all monies wrongfully obtained by Apple and the money should be disgorged from Defendant, and returned to Plaintiffs and the class.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray this Court enter a judgment against Defendant that:

A.      This action be certified and maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and certify the proposed class as defined;

B.      Awards compensatory and/or punitive damages as to all Causes of Action where such relief is permitted;

C.      Awards Plaintiffs and proposed class members the costs of this action, including reasonable attorney's fees and expenses;

D.      Orders Apple to immediately cease its wrongful conduct as set forth above; enjoins Apple from continuing to falsely market and advertise, conceal material information, and conduct business via the unlawful and unfair business acts and practices complained of herein, orders Apple to engage in a corrective notice campaign, and required Apple to refund to Plaintiffs and all of the class members the funds paid to Apple for these defective products, including, if no reasonably safe replacement product exists, the full price paid for the subject computers;

E.      Awards equitable monetary relief, including restitution and disgorgement of all ill-gotten gains, and the imposition of a constructive trust upon, or otherwise restricting the proceeds of Defendant's ill-gotten gains, to ensure that Plaintiffs and proposed class members have an effective remedy;

F.      Awards pre-judgment and post-judgment interest at the legal rate; and

G.      Such further legal and equitable relief as this Court may deem just and proper.


DATED: MAY 15, 2014                    Respectfully submitted,


                            By:     /s/ Omar W. Rosales
                                    Omar W. Rosales


                                    **THE ROSALES LAW FIRM, LLC**
                                    WWW.OWROSALES.COM
                                    OMAR W. ROSALES
                                    Federal No. 69067
                                    402 SOUTH F ST
                                    HARLINGEN, TX 78550
                                    (866) 402-8082 Toll-Free
                                    (956) 423-1417 Tel
                                    (956) 444-0217 Fax



CERTIFICATION OF INTERESTED ENTITIES OR PERSONS


        Pursuant to Civil Local Rules, the undersigned certifies that as of this date, other

than the named parties, there is no such interest to report.



                                    /s/ Omar W. Rosales


                                    OMAR W. ROSALES, ATTORNEY OF
                                    RECORD FOR PLAINTIFFS
                                    URIEL MARCUS and
                                    BENEDICT VERCELES